UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONYELEN BROWN, ) <br> on behalf of Plaintiff and a class, ) <br> ) <br> Plaintiff, ) <br> ) No. 25-cv-02799 <br> v. ) <br> ) Judge April M. Perry <br> KEOUGH & MOODY, P.C., ) <br> and BAY PROPERTY SERVICES, INC., ) <br> ) <br> Defendants. ) | |

**OPINION AND ORDER**

Tonyelen Brown ("Plaintiff") brings this putative class action lawsuit against Keough & Moody, P.C. ("K&M") and Bay Property Services, Inc. ("BPS") under the Fair Debt Collection Practices Act ("FDCPA") and Illinois state law. Specifically, Plaintiff alleges a violation of the FDCPA by K&M (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") by BPS (Count II), and a claim for unjust enrichment against both defendants (Count III). Doc. 1. Before this Court is BPS's motion to dismiss Counts II and III under Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6). Doc. 27. For the following reasons, BPS's motion to dismiss is denied.

**BACKGROUND**

This action arises out of K&M's and BPS's attempts to collect a debt on behalf of the Arbors of Justice Condominium Association. Doc. 1 ¶ 15. K&M is a law firm which advertises itself as "providing full-service representation to condominium, townhome, and homeowners' associations" and "regularly institutes legal proceedings seeking the eviction of delinquent

---
[1] BPS moved for dismissal under Rule 12(1), but it presumably meant Rule 12(b)(1). Doc. 27 at 1.

owners and obtaining judgments against delinquent owners." *Id.* ¶¶ 7-9. BPS engages in the business of managing condominiums and other community associations. *Id.* ¶¶ 13-14.

On September 27, 2024, K&M filed an eviction and collections action against Plaintiff in state court for a property located in Justice, Illinois. *Id.* ¶ 16; Doc. 1-1 at 3. The state court complaint attached ledgers prepared by BPS, which listed a "Late Admin Fee – Collections Admin Charge" of $200 from August 1, 2024. Doc. 1 ¶¶ 17-18. Plaintiff alleges that this amount did not correspond to a late fee or regular assessment related to Plaintiff's condominium and instead represented a charge by BPS for handing over the debt collection file to K&M. *Id.* ¶ 19. Either K&M or BPS prepared a 30-day notice and demand, which was then mailed to Plaintiff. *Id.* ¶ 20. The state court action was settled and nonsuited when Plaintiff paid the debt and additional sums for attorneys' fees and costs. *Id.* ¶¶ 5, 23. Plaintiff now contends that nothing in the declaration or bylaws recorded by the Arbors of Justice Condominium Association authorized such an administrative fee, and any attempt to collect the supposed debt was therefore illegal. *Id.* ¶ 26.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. When a defendant brings a 12(b)(1) motion, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). If a defendant factually challenges the basis for federal jurisdiction, the "district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears,*

2

*Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). It is the plaintiff's burden to establish standing. *Id.* at 443.

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Id.*

## ANALYSIS

In its motion to dismiss, BPS argues that dismissal is appropriate because: (1) Plaintiff lacks Article III standing due to lack of injury; (2) the ICFA claim is not plausibly alleged due to lack of damages or due to the voluntary payment doctrine; and (3) Plaintiff's unjust enrichment claim fails because it cannot stand independent of the ICFA claim and because the parties have a contract. BPS also asserts for the first time in its reply brief that dismissal of the ICFA claim is

appropriate because there was no deceptive or unfair practice, and that dismissal of the unjust enrichment claim is warranted because BPS is not alleged to have received a direct benefit or payment from Plaintiff.

### I.  Article III Standing

The Court begins, as it must, with Article III standing. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The requirement of standing derives from this provision and has three elements: plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Only injuries that are sufficiently concrete, particularized, and actual or imminent qualify as injuries in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). A plaintiff unaffected by defendant's supposed misconduct is not injured. *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (plaintiffs lacked concrete injury where evidence showed inaccurate communication from debt collector did not "detrimentally affect[ ] the debtors' handling of their debts."). Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

The Court concludes that Plaintiff has adequately pled Article III standing. The complaint alleges that BPS tried to collect a debt from Plaintiff that was not owed – specifically, a "Late Admin Fee – Collections Admin Charge" of $200 that was not authorized by Plaintiff's condominium declaration or bylaws. Doc. 1 ¶¶ 18-19.  As part of this debt collection, K&M filed a lawsuit against Plaintiff which Plaintiff felt forced to settle because she risked being evicted. *Id*. ¶ 28. According to the complaint, Plaintiff arranged to pay both the debt and "additional sums for attorney's fees and costs." *Id*. ¶ 23. This payment of a debt Plaintiff allegedly did not owe

4

clearly constitutes an injury for the purposes of Article III standing. *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (noting that a violation which causes a plaintiff "to pay debts they did not owe" would constitute "a concrete injury that might support ... standing to sue"). Moreover, Plaintiff's injury is traceable to BPS's conduct, as BPS allegedly claimed it was owed the fee when passing the case along to K&M. Finally, Plaintiff's injury can be redressed by repayment of the sums that Plaintiff was allegedly coerced to pay. Thus, all the elements of Article III standing have been met for the purposes of a motion to dismiss.

    II.    **ICFA**

The next question is whether Plaintiff has plausibly alleged a claim under the ICFA. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "The elements of an ICFA claim are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 555–56 (7th Cir. 2025) (internal citation omitted). When the plaintiff is a private party, the plaintiff must show she suffered "actual damage" as a result of the defendant's ICFA violation. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). The ICFA allows for recovery for either deceptive or unfair conduct, *see Robinson*, 775 N.E.2d at 960, and Plaintiff here proceeds under both theories of recovery. Doc. 1 ¶ 49.

Plaintiff argues that a violation of ICFA occurred because the $200 administrative fee was not authorized under the Illinois Condominium Property Act and therefore should not have been requested in an eviction action. In relevant part, 765 ILCS 605/9.2 states:

> (c) Other than attorney's fees, no fees pertaining to the collection of a unit owner's financial obligation to the Association, including fees charged by a manager or managing agent, shall be added to and deemed a part of an owner's respective share of the common expenses unless: (i) the managing agent fees relate to the costs to collect common expenses for the Association; (ii) the fees are set forth in a contract between the managing agent and the Association; and ***(iii) the authority to add the management fees to an owner's respective share of the common expenses is specifically stated in the declaration or bylaws of the Association***.

(emphasis added). Courts have extended ICFA protections to the condominium owner and condominium association relationship when owners pay association fees in exchange for work and services. *See Speights-Carnegie v. Blackstone Condo. Ass'n*, No. 15-CV-3781, 2016 WL 2644864, at *6 (N.D. Ill. May 10, 2016); *see also People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 64 (Ill. 1991) (discussing intent of Illinois legislature to extend the reach of ICFA broadly, and finding that that debt collection practices are embraced by the ICFA).

BPS argues that the ICFA claim is not plausibly pled because there is no allegation of actual damages. The Court disagrees. The complaint alleges that Plaintiff was forced to pay not only a $200 debt she did not owe, but also attorneys' fees and costs. This qualifies as actual damages. *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009) (stating that the ICFA "provides remedies for … economic injuries" that are calculable); *Grant–Hall v. Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929, 942 (N.D. Ill. 2012) (finding that "the time and money Plaintiffs spent defending the debt collection lawsuits" plausibly constituted actual damages under the ICFA).

In the alternative, BPS argues that even if actual damages were plausibly alleged, Plaintiff's recovery is barred by the voluntary payment doctrine. The voluntary payment doctrine

6

"embodies the ancient and universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 80 (Ill. 2019) (internal citation omitted). To avoid application of the doctrine, a party must show that the claim asserted was unlawful and that the payment was not voluntary. *Id.* "In addition to compulsion or duress, other recognized exceptions to the voluntary payment doctrine include fraud or misrepresentation or mistake of a material fact." *Id.* at 80-81.

The voluntary payment doctrine is an affirmative defense. *Harris v. ChartOne*, 841 N.E.2d 1028, 1031 (Ill. App. Ct. 2005). As a result, dismissal due to the voluntary payment doctrine would only be appropriate if the complaint's factual allegations unambiguously establish all the elements of the defense. *Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003) (stating that "litigants need not plead around defenses").

In this case, the complaint does not unambiguously establish that the voluntary payment doctrine applies because the complaint asserts that the payment was not, in fact, voluntary. Rather, the complaint alleges that Plaintiff had "little choice" but to agree to pay the fees levied against her by BPS because she risked being evicted from her home. Doc. 1 ¶ 28. Plaintiff argues that the high costs of defending even an unfair lawsuit equate to coercion, an exception to the voluntary payment doctrine. Drawing all reasonable inferences in Plaintiff's favor, the possibility of coercion during settlement negotiations raises factual questions not appropriately resolved on a motion to dismiss. *See Crain v. Lucent Techs., Inc.*, 739 N.E.2d 639, 644 (Ill. App. Ct. 2000) (noting that under Illinois law the question of the applicability of the voluntary payment doctrine and exceptions thereto is essentially factual and that the "resolution of this issue will require the presentation of evidence so that the court or fact finder can determine whether a payment was

7

voluntarily made without protest and without fraud or mistake."). Therefore, the Court will not dismiss the ICFA claim based upon the voluntary payment doctrine.

The only other challenge BPS raises to the ICFA claim is whether Plaintiff adequately alleged a deceptive or unfair practice. However, this argument was raised for the first time in BPS's reply brief and was therefore waived. *Gold v. Wolpert*, 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989); *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010).[2] For these reasons, the Court denies BPS's motion to dismiss the ICFA claim alleged in Count II.

### III. Unjust Enrichment

BPS next argues that the unjust enrichment claim fails: (1) because unjust enrichment is not a standalone tort and is dependent on a plausible ICFA claim; and (2) because a claim of unjust enrichment is not viable when there is an express contract. BPS adds in its reply that "Plaintiff fails to plead that BPS directly received the disputed payment or otherwise retained a benefit that would make retention inequitable." Doc. 36 at 3. Having already found that the ICFA claim is plausibly alleged, it is unnecessary to address BPS's first argument. Moreover, as already discussed, the third argument which was raised for the first time in BPS's reply brief has been waived. The Court thus limits its analysis to the question of whether Plaintiff's express contract with the Arbors of Justice Condominium Association bars the unjust enrichment claim against BPS.

---

[2] BPS also attempted to add a new argument seven months after its opening brief was filed, citing two recently-decided cases from this district. Doc. 54. Both cases were decided based upon factual arguments not made by BPS in this case. Specifically, the defendants in those cases argued that the condominium declarations and bylaws at issue in their cases explicitly authorized the fees charged by the management companies. These cases did not create new law. The argument raised in those cases was available to BPS at the time it filed its opening brief, and its failure to raise it constitutes waiver – at least for the purposes of this motion to dismiss.

Unjust enrichment claims may be predicated on either quasi-contract or tort theories. *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. App. Ct. 1998). When the relationship between the parties "is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). When the claim arises from tortious conduct, "existence of a specific contract does not defeat [a] cause of action." *Peddinghaus*, 692 N.E.2d at 1225.

Here, BPS's argument that the unjust enrichment claim is barred due to a contract fails because Plaintiff's complaint nowhere asserts the existence of a contract between Plaintiff and BPS. At most, the complaint alleges contracts in the form of the condominium declaration and bylaws between the Arbors of Justice Condominium Association and Plaintiff. Doc. 1 ¶ 26; *see Hutsonville Cmty. Unit Sch. Dist. No. 1 v. Illinois High Sch. Ass'n*, 195 N.E.3d 798, 804 (Ill. App. Ct. 2021) ("In Illinois, the constitution and bylaws of associations can constitute a contract between the association and its members."). But BPS is not the same entity as the condominium association; BPS is a third party hired by the association to manage its building. Plaintiff's claim arises not out of any breach of contract between BPS and Plaintiff, but out of BPS's alleged abuse of its power over Plaintiff to try to coerce unjustified fees from Plaintiff. For these reasons, the claim of unjust enrichment is not obviously barred by any express contract and the Court denies BPS's motion to dismiss Count III.

## CONCLUSION

BPS's motion to dismiss is denied. BPS is to answer the complaint by February 16, 2026.

Dated: January 26, 2026

_____
APRIL M. PERRY
United States District Judge

9